Filed 2/23/15  Birman v. Gottlieb CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PATRICIA BIRMAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THOMAS P. GOTTLIEB,<br><br>    Defendant and Respondent. | D064088<br><br><br>(Super. Ct. No.<br> 37-2011-00098844-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy

B. Taylor, Judge.  Affirmed.

Morris Law Firm and Christopher S. Morris for Plaintiff and Appellant.

Brierton, Jones & Jones and B. James Brierton for Defendant and Respondent.

I.

INTRODUCTION

Appellant Patricia Birman was a beneficiary of the Badalung Trust, a trust that

was established under the laws of Liechtenstein.  Birman's father, respondent Heinz

Gottlieb, was a "protector"[1] of the Badalung Trust.[2]  Birman sued Gottlieb in 2006, alleging that Gottlieb had committed various fraudulent acts in connection with the Badalung Trust.  Birman and Gottlieb settled the 2006 case by way of a Settlement Agreement and General Mutual Release (2007 Settlement Agreement and Release), pursuant to which Birman agreed to release all claims, "whether known or unknown," against Gottlieb.  After the parties executed the 2007 Settlement Agreement and Release, Birman dismissed the 2006 case.

Birman filed the first amended complaint in this action against Gottlieb in 2012, alleging seven causes of action styled as follows: fraud (settlement agreement), fraud (underlying actions), negligent misrepresentation, constructive fraud, breach of fiduciary duty, conversion, and intentional interference with expected inheritance.  A jury trial commenced in February 2013.  Following the close of Birman's case, Gottlieb filed a motion for nonsuit on the ground that Birman had failed to present substantial evidence that the 2007 Settlement Agreement and Release should be set aside, which would be necessary in order for Birman to prevail on her substantive causes of action.  The trial

[1]     The Badalung Trust granted the protectors of the trust certain specified powers, including the power to approve or disapprove various actions that the trustees of the trust proposed to take.

[2]     Although the copy of the Badalung Trust and the amendment to the trust that are contained in the record do not indicate that Gottlieb was a protector, the parties both state in their briefs that Gottlieb was a protector of the Badalung Trust.

While this appeal was pending, Heinz Gottlieb died.  Pursuant to respondent's counsel's request, this court substituted Thomas P. Gottlieb as a party to the action in the place of Heinz Gottlieb.

court granted the motion for nonsuit and subsequently entered a judgment of nonsuit in favor of Gottlieb.

On appeal, Birman claims that the trial court erred in granting Gottlieb's motion for nonsuit. Specifically, Birman maintains that she presented substantial evidence that the 2007 Settlement Agreement and Release should be rescinded, and that the trial court erred in concluding that the 2007 Settlement Agreement and Release barred her from prevailing on any of her claims.[3] We reject Birman's contention and affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The prior action*

Birman filed a lawsuit against Gottlieb in 2006. In her complaint, Birman alleged that Gottlieb had "used his control over [Birman's] share of the [Badalung Trust] to embezzle and/or allow others to embezzle a significant share of her funds." Birman brought claims for fraud, negligent misrepresentation, breach of fiduciary duty, and conversion.

---

[3]  The trial court granted Gottlieb's motion for nonsuit on Birman's claim for intentional interference with expected inheritance on the additional ground that Birman had failed to present evidence sufficient to support several of the elements of this claim. Birman has not raised any argument on appeal as to the trial court's ruling with respect to this claim, and we therefore deem the claim abandoned. (See, e.g., *Hood v. Compton Community College Dist.* (2005) 127 Cal.App.4th 954, 958, fn. 2 ["We assume from plaintiffs' failure to discuss the due process violation claim in their opening brief that the cause of action has been abandoned"].)

In March of the following year, the parties settled the action by executing the 2007 Settlement Agreement and Release. In that agreement, Gottlieb agreed to "waive his right to collect costs and assert any potential claims against [Birman]." The agreement further provided that Gottlieb would "pay no money to [Birman] in settlement of the Litigation." Birman agreed to dismiss the case and both parties agreed to release all "claims . . . of every kind . . . whether known or unknown, whether suspected or unsuspected . . . ." In April 2007, Birman dismissed the action.[4]

B.    *The complaint and first amended complaint in this action*

In 2011, Birman filed the present action, and in 2012 she filed the operative first amended complaint. In the first amended complaint, Birman alleged that in the prior action, Gottlieb and his lawyers had "provided . . . documents from a UBS bank account in Switzerland purportedly detailing all her '[Badalung Trust] assets.' " Birman further alleged that "[i]t was represented to her that these account statements represented 'your client's share of the [Badalung] Trust funds.' " Birman claimed that she was told " 'you now have everything you are entitled to,' " and that, based on "the strength of that representation," she settled the prior action.

Birman further alleged that she received a letter from Swiss tax authorities in 2010 that demonstrated "the falsity of these representations." Specifically, Birman claimed that the 2010 letter demonstrated that she had an interest in a separate account called the

---

4    Although the dismissal is not contained in the record, it is undisputed that Birman dismissed the prior case.

Valor Account, of which she had previously been unaware. Birman brought a claim styled as fraud (settlement agreement) in which she claimed that Gottlieb's representations in connection with the prior action to the effect that she had received the entirety of her inheritance were false because Gottlieb "knew that the account statements failed to disclose the existence of the Valor Fund account." In her prayer for relief, Birman requested rescission of the 2007 Settlement Agreement and Release. Birman also brought various substantive claims including fraud and conversion (see pt. I.A., *ante*), and sought money damages.

C.      *Gottlieb's initial motion for nonsuit*

A jury trial commenced in February 2013. During his opening statement, Birman's counsel did not indicate that he intended to present any evidence relating to Birman's alleged interest in the Valor Account—the only basis alleged in the first amended complaint for setting aside the 2007 Settlement Agreement and Release. After the opening statement, Gottlieb's counsel made a motion for nonsuit. In discussing the motion outside the presence of the jury, Birman's counsel acknowledged that he would not be presenting any evidence related to the Valor Account, but maintained that he would present other evidence purportedly demonstrating that money had been misappropriated

5

from Birman's UBS account.[5] The trial court denied the motion for nonsuit without prejudice to the motion being renewed at the close of Birman's case-in-chief.

D.     *Gottlieb's renewed motion for nonsuit*

After the close of Birman's case-in-chief, Gottlieb filed a motion for nonsuit. In his motion, Gottlieb argued that Birman failed to present substantial evidence that would justify setting aside the 2007 Settlement Agreement and Release. Among other arguments, Gottlieb claimed that while Birman had attempted to present evidence that funds were missing from Birman's share of the Badalung Trust, that evidence would "only support adjudications relating to the accounting of the trustees." Gottlieb contended that Birman had failed to present "any evidence of a concealment by [Gottlieb]," as would be "necessary in order set aside the [2007 Settlement Agreement and Release]."

In opposing the motion, Birman argued that the 2007 Settlement Agreement and Release should be set aside based on evidence of various acts of fraud committed by Gottlieb leading up to the agreement, including fraudulent nondisclosure, fraud by a fiduciary, and intentional misrepresentation. As to intentional misrepresentation, Birman contended that Gottlieb had induced her to enter into the 2007 Settlement Agreement and Release by falsely telling her that she had received the " 'entirety of her inheritance from Europe.' " With respect to fraudulent nondisclosure, Birman argued that in settling the

---

5     We discuss in detail below the evidence that Birman presented in her case-in-chief that she contends supports setting aside the 2007 Settlement Agreement and Release (see pt. II.D.-E. and pt. III., *post*).

6

prior action, Gottlieb had informed her that she had received the entirety of her inheritance without disclosing various material facts, including that there was "a substantial sum of money missing from her account" and that Gottlieb had not performed an accounting, had instructed the trustees to transfer money from the Badalung Trust to his account without her consent, and had been more liberal in "making distributions to [another] beneficiary." Birman further contended that she had presented evidence that "Gottlieb was a fiduciary to [Birman]," and that the acts described above constituted a fraud by a fiduciary.

E.    *The trial court's ruling*

The trial court granted Gottlieb's motion for nonsuit. In its ruling, the court stated "[Birman's] essential theory is that she was tricked into signing the [2007 Settlement Agreement and Release] and dismissing her first case." The court then reviewed the law governing fraud as a basis for voiding a release, and the evidence that Birman had presented on this issue. The court ultimately ruled that "the first cause of action, which seeks to set aside the [2007 Settlement Agreement and Release] fails. The nonsuit motion must be granted." The court subsequently entered a judgment of nonsuit in favor of Gottlieb.

F.    *Birman's motion for new trial*

Birman filed a motion for new trial in which she argued that she had presented evidence demonstrating both that "she did not intend for the release to encompass the

7

claims at issue," and that the 2007 Settlement Agreement and Release should be rescinded on the ground that it was procured by fraud.

The trial court denied the motion for new trial, reasoning in part, "The court received all the evidence [Birman] had to offer, considered it carefully, and found . . . it well short of constituting evidence that would justify setting aside the obvious intent of the [2007 Settlement Agreement and Release]. . . . [Birman] failed to prove she was defrauded into signing the 2007 Release." (Italics omitted.)

G. *The appeal*

Birman timely appeals from the judgment.

III.

DISCUSSION

A. *The trial court did not err in granting Gottlieb's motion for nonsuit*

Birman maintains that the trial court erred in concluding that the 2007 Settlement Agreement and Release bars her from prevailing on her claims for fraud, negligent misrepresentation, constructive fraud, breach of fiduciary duty, and conversion.

1. *Governing law*

a. *The law governing nonsuits*

In *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347, the Supreme Court outlined the law that governs a trial court's consideration of a motion for nonsuit and the standard of review to be applied on appeal to a judgment of nonsuit:

> "In reviewing a judgment of nonsuit, 'we must view the facts in the light most favorable to the plaintiff. "[C]ourts traditionally have taken a very restrictive view of the

8

circumstances under which nonsuit is proper. The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.] [¶] In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . ." [Citation.] The same rule applies on appeal from the grant of a nonsuit.' "

b. *General principles of law governing the enforceability of a release*

In *Bardin v. Lockheed Aeronautical Systems Co.* (1999) 70 Cal.App.4th 494, 505 (*Bardin*), the court outlined the law governing the enforceability of a release:

" 'In general, a written release extinguishes any obligation covered by the release's terms,[6] provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence. [Citations.] [¶] " 'The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding; but it is also a general rule that the assent of a party to a contract is necessary in order that it be binding upon him, and that, if the circumstances of a transaction are such that he is not estopped from setting up his want of assent, he can be relieved from the effect of his signature if it can be made to appear that he did not in reality assent to it.' " ' "

As suggested by the *Bardin* court, "a releasor [may] be permitted to avoid a release if he was induced to enter the agreement because of fraud practiced by the releasee." (*San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1054.) For example, a release may be unenforceable where "the release was obtained by

---

6    With respect to claims that are not known or suspected at the time of the execution of the release, Civil Code section 1542 states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." However, "[p]arties represented by counsel have even been allowed to waive the protection of Civil Code section 1542, thereby giving up the right to bring suit on *unknown or unsuspected* claims at the time the contract is executed." (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1263, italics added.)

a fiduciary without full disclosure of the relevant facts." (*Id*. at p. 1054, fn. 2.) In addition, where the releasee's fraud "prevent[s] the releasor from knowing about his claim," the release may be avoided by the releasor. (*Ibid.*)

2.    *Application*

Birman raises three arguments in support of her contention that the trial court erred in concluding that her claims are all barred as a matter of law by the 2007 Settlement Agreement and Release. We consider each argument below.

a.    *Birman did not present substantial evidence that the release may be rescinded on the ground that Gottlieb breached fiduciary duties owed to her during the negotiation and execution of the 2007 Settlement Agreement and Release*

Birman contends that Gottlieb owed her "fiduciary duties" by virtue of his "dual role as father and Protector [of the Badalung Trust]" (italics omitted), and that these fiduciary duties remained in effect as the parties negotiated and executed the 2007 Settlement Agreement and Release. Birman further maintains that she presented substantial evidence that the 2007 Settlement Agreement and Release should be rescinded on the ground that Gottlieb breached these fiduciary duties by perpetrating various acts of "constructive fraud" upon her.[7] We consider each of the various

---

[7]    " ' "Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." [Citation.] [¶] "[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." ' " (*Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc*. (2014) 224 Cal.App.4th 574, 588.)

purported instances of constructive fraud by a fiduciary that Birman asserts in her brief, and conclude that none is supported by substantial evidence.

First, Birman contends that Gottlieb "failed to disclose to [her] that he had never done an accounting" or "asked to look at the records [for the Badalung Trust]." This contention fails because there is no evidence that Gottlieb had any duty either to perform an accounting or to inform Birman that he had not performed an accounting, and no evidence that Gottlieb had any duty to examine the records of the Badalung Trust or to inform Birman whether he had reviewed such records. The plain language of the Badalung Trust charges the *trustees* with "keep[ing] complete and accurate records of all transactions relevant to the Trust Fund," and contains no language imposing a duty on a *protector*, such as Gottlieb, to performing an accounting of the trust or to review the records of the trust.[8] Birman presented no testimony or other evidence suggesting that the protectors of the Badalung Trust had such a duty. Birman's claim that Gottlieb failed to disclose that he "had never supervised the trustees in Liechtenstein" fails for the same reason, namely, the absence of evidence that Gottlieb had any duty to monitor the trustees.

Birman also contends that the 2007 Settlement Agreement and Release may be avoided based on evidence that Gottlieb "directed money from her account into his separate account." At trial, Birman presented evidence that on two occasions, prior to

---

8    The document establishing the Badalung Trust was admitted in trial as an exhibit, and is in the record.

11

2007, the trustees of the Badalung Trust distributed money from the Badalung Trust to a trust called the Reichenberg Trust, and that Gottlieb was a beneficiary of the Reichenberg Trust. However, Birman failed to present any evidence that these transfers were fraudulent or that Gottlieb authorized the distributions knowing that they were fraudulent. In the absence of such evidence, Birman's contention that she may avoid the 2007 Release and Settlement Agreement on the basis of these transfers is without merit.[9]

We also reject Birman's contention that she presented substantial evidence that Gottlieb fraudulently "shorted her 4 million dollars." Birman's assertion in this regard is based entirely on Gottlieb's estimate that the settlor's initial deposit into the Badalung Trust in 1987 was approximately $5 million,[10] and that Birman's share was approximately $1 million, and Birman's theory that "if invested properly[,] [her] share would have grown to [$]5 million upon segregation in 1996[,][[11]] leaving her

---

[9]    We strongly question whether Birman would be able to avoid the 2007 Settlement Agreement and Release even assuming that there *was* evidence that Gottlieb had knowingly consented to fraudulent distributions from the Badalung Trust, in light of the fact that in 2007 Settlement Agreement and Release, Birman agreed to release all "claims . . . of every kind . . . whether known or unknown, whether suspected or unsuspected." However, we need not decide this question since Birman's claim fails for the reason stated in the text.

[10]    At trial, Birman's counsel asked Gottlieb, "Sir, could you tell us your best estimate of when that money went into the trust account in 1987 by [the settlor], how much went in there?" After Gottlieb answered that he had "no idea," Birman's counsel read portions of Gottlieb's deposition in which he estimated that the settlor had initially put "more or less around one million," for each beneficiary into the Badalung Trust.

12

approximately [$]4 million short." The argument fails because Birman failed to present any evidence as to the manner by which the funds in the Badalung Trust were invested in the period between 1987 and 1996, or any evidence that Gottlieb, as a protector, was responsible for any assumed failure to properly invest the funds. Paragraph 7 of the Badalung Trust, as well the undisputed testimony presented at trial with respect to this issue, makes clear that it was the *trustees'* sole responsibility to manage the res of the Trust.[12] In short, Birman's assertion that Gottlieb "shorted her 4 million dollars" is pure speculation, is not supported by a scintilla of evidence, and provides no basis for rescinding the 2007 Settlement Agreement and Release.

We further reject Birman's contention that the 2007 Settlement Agreement and Release may be rescinded because the "evidence was clear that [Gottlieb] favored one beneficiary over the other." Although this contention is not specifically articulated in the argument portion of Birman's brief, Birman appears to be contending that Gottlieb had a duty to ensure that the trustees distributed an equal amount of funds to each beneficiary. Birman fails to demonstrate that Gottlieb owed the beneficiaries of the Badalung Trust such a duty, and we see no evidence of the existence of such a duty in either the language

[11]    It is undisputed that the shares belonging to various beneficiaries of the Badalung Trust were segregated into separate accounts in 1996.

[12]    By mutual agreement of the parties, Dr. Peter Wolff, an expert on Liechtenstein trust law, was called as a witness by Gottlieb during Birman's case-in-chief, apparently in order to accommodate Dr. Wolff's travel schedule. Dr. Wolff testified, "The significance of Paragraph 7 is the trustees can decide about the management of the trust, can manage the trust funds, and especially decide about investments which have to be made without asking the protector for his consent."

13

of the Trust or in any of the testimony presented at trial.[13]  Accordingly, we reject Birman's contention that the 2007 Settlement Agreement and Release may be rescinded based on evidence that Gottlieb purportedly favored another beneficiary of the Badalung Trust over Birman.

Finally, we reject Birman's argument that she may rescind the 2007 Settlement Agreement and Release on the ground that Gottlieb perpetrated a constructive fraud on her by informing her that she had "received all of her inheritance" without any reasonable basis for making such a statement.  This argument is based on two letters sent by Gottlieb's lawyers to Birman's lawyers in 2007, after the trustees had distributed the balance of Birman's share of the Badalung Trust to Birman, and prior to the execution of the 2007 Settlement Agreement and Release.

The first letter stated in relevant part: "I have been informed that your client, Patricia Birman, has recently received all her funds from Europe.  If true, I would appreciate knowing exactly what it is we are litigating."

The second letter stated in relevant part, "In prior correspondence, you have admitted that your client has received the entirety of her inheritance monies for the

---

[13]     While Birman quotes Dr. Wolff's testimony that the protectors of the Badalung Trust had to "take care that the interests of the various beneficiaries are treated in an equal way," Dr. Wolff was discussing the protector's general duty to act in good faith. Wolff did not testify that Gottlieb was required to exercise his power to consent to ensure that proposed distributions were made to each beneficiary in an identical fashion. Further, it is undisputed that the funds in the Badalung Trust were segregated in 2006, such that each beneficiary had his or her own account.  Thus, distributions to one beneficiary would not reduce the other beneficiaries' shares.

14

Badalung Trust in Europe. . . . [¶] Your client simply cannot carry the burden of proof to show that Mr. Gottlieb, at any time, concealed, diverted, or caused to divert any assets from her inheritance. Finally, Ms. Birman has no damages because it is undisputed that she has received the entirety of her inheritance already. Given this fact, coupled with the dearth of evidence presented, leads to the conclusion there is no reason to further litigate or mediate this dispute."

Neither letter can reasonably be interpreted as constituting an assurance by Gottlieb to Birman that she had "received all of her inheritance." The first letter makes clear that Gottlieb's counsel did not have firsthand knowledge as to whether Birman had received the entirety of her inheritance ("I have been informed"), and expressly makes conditional the representation that Birman had received all of her funds from Europe ("If true"). The second letter states that *Birman*'s counsel had admitted that Birman had received "the entirety of her inheritance," and states that this fact is "undisputed." Further, as discussed above, there is no evidence that Gottlieb, as a protector, had any duty to provide an accounting of the Badalung Trust, and the plain language of the trust demonstrates that the *trustees* were solely responsible for performing an accounting. In addition, it is undisputed that, in determining whether to execute the 2007 Settlement Agreement and Release, Birman's counsel retained an accountant to "perform an accounting [of] Mr. Birman's share of the Badalung Trust."

In addition to these facts, the 2007 Settlement Agreement and Release contains terms indicating that no representations other than those contained in the Agreement have

15

been made by either party.  Specifically, the 2007 Settlement Agreement and Release

provides:

> "Each party acknowledges that no other person, nor any attorney or any other person, has made any promise, representation, or warranty whatsoever, express or implied, not contained herein, concerning the subject matter hereof to induce the parties to execute or authorize the execution of this Agreement, and acknowledges that it has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein.  No party relies upon any statement of any other party in executing this Agreement, except as expressly stated herein."

It is undisputed that Gottlieb's counsel's statements were not contained in the 2007

Settlement Agreement and Release.

In sum, it is clear that neither letter on which Birman relies constitutes substantial

evidence that Gottlieb perpetrated a constructive fraud upon Birman in connection with

the 2007 Settlement Agreement and Release.

Accordingly, we conclude that Birman did not present substantial evidence that

the release could be avoided on the ground that Gottlieb breached fiduciary duties owed

to her during the negotiation and execution of the 2007 Settlement Agreement and

Release.

16

b. *Birman failed to present substantial evidence that she did not intend to release the claims that she is asserting in this lawsuit*

Birman contends that the trial court erred in granting Gottlieb's motion for nonsuit because she presented substantial evidence that "calls into question whether the parties intended that the release . . . encompassed a claim that [Birman's] inheritance had been misappropriated."

The 2007 Settlement Agreement and Release contains a broad release provision that states in relevant part: "[T]he Parties mutually release . . . all claims . . . of every kind, nature, and description . . . whether known or unknown, whether suspected or unsuspected . . . ."  The 2007 Settlement Agreement and Release also provides, "the Parties acknowledge that they are aware that facts may hereafter be discovered in addition to or different from those now known or believed to be true with respect to this release, but that it is the intention of the Parties to hereby fully, finally, and forever release and discharge each other . . . ."

Accordingly, we conclude that Birman failed to present substantial evidence that she did not intend to release the claims that she is asserting in this lawsuit.

c. *Birman did not present substantial evidence that the 2007 Settlement Agreement and Release was procured by actual fraud*

Birman contends that the trial court erroneously granted Gottlieb's motion for nonsuit because she presented substantial evidence that the 2007 Settlement Agreement and Release was procured by "actual fraud."  Specifically, Birman contends that she

17

presented substantial evidence that the 2007 Settlement Agreement and Release should be rescinded based on the doctrine of fraudulent nondisclosure.

"A party seeking rescission based on fraudulent nondisclosure must show (1) the defendant failed to disclose a material fact which he knew or believed to be true, and (2) the defendant had a duty to disclose that fact. [Citation.] The duty to disclose arises when two elements are present: (1) the material fact is known to (or accessible only to) the defendant; and (2) the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact." (*San Diego Hospice, supra*, 31 Cal.App.4th at p. 1055, italics omitted.)

Birman's sole contention is that "Gottlieb's representation that [Birman] had 'received the entirety of her inheritance' " was made without Gottlieb disclosing various purported "material facts" to Birman. For the reasons discussed in part III.A.1.a., *ante*, Gottlieb's counsel's statements in letters to Birman's counsel concerning Birman's inheritance cannot reasonably be interpreted as assurances by Gottlieb to Birman that she had received the entirety of her inheritance. Further, Gottlieb had no duty to disclose any of the purported "material facts" mentioned in Birman's brief. For example, while Birman asserts that Gottlieb failed to disclose to her that there "was a substantial sum of money missing from her account," she fails to present any argument concerning the evidence that she presented that such money was in fact "missing."[14] We are also not

---

14     At trial, a forensic accountant testified that certain disbursements from the Badalung Trust were "unexplained" based on the records that the accountant had

18

persuaded by Birman's assertion that she may rescind the 2007 Settlement Agreement and Release on the ground that Gottlieb failed to disclose that he was a beneficiary of the Badalung Trust. Birman clearly was aware that Gottlieb was a beneficiary of the Badalung Trust, since she alleged as much in her 2006 complaint in the prior lawsuit.[15]

Accordingly, we conclude that Birman did not present substantial evidence that the 2007 Settlement Agreement and Release was procured by actual fraud.

d.    *In light of the enforceability of the release, the trial court properly granted Gottlieb's motion for nonsuit*

Birman's sole claim on appeal is that the trial court erred in concluding that the 2007 Settlement Agreement and Release bars her from prevailing on her claims for fraud, negligent misrepresentation, constructive fraud, breach of fiduciary duty, and conversion. We have rejected all of Birman's arguments in support of this claim in part III.A.1.a.-c., *ante*. Accordingly, we conclude that the trial court properly granted Gottlieb's motion for nonsuit and entered a judgment of nonsuit in his favor.

---

reviewed. However, the accountant did not testify that the payments were fraudulent. In addition, even assuming that Birman presented substantial evidence that money was "missing" from her account, she failed to present substantial evidence that Gottlieb, and not the trustees, was responsible for any "missing" money.

[15]    In addition to these issues, Birman refers to several other purported "material facts" that Gottlieb allegedly failed to disclose, including that he: failed to perform an accounting of the Badalung Trust; approved the transfer of funds from the Badalung Trust to the Reichenberg Trust; favored one beneficiary of the Badalung Trust over Birman; and failed to inform Birman that the initial deposit into the Badalung Trust was approximately $5 million. Birman fails to demonstrate that Gottlieb had any duty to disclose any of this information, and we conclude that Birman's arguments with respect to these issues are unpersuasive, for the reasons discussed in part III.A.1.a., *ante*.

19

B.      *Gottlieb's motion for sanctions is denied*

While this appeal was pending, Gottlieb filed a motion for sanctions on the ground that Birman's appeal is frivolous.

1.      *Governing law*

"When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (Code Civ. Proc., § 907.)  " '[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment— *or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.*' "  (*In re Reno* (2012) 55 Cal.4th 428, 513 (*Reno*), quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, italics added in *Reno*.)  "However, any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal.  Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal.  An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty, supra,* at p. 650.)

## 2. *Application*

Gottlieb raises several arguments in support of his request for sanctions. First, Gottlieb cites various documents that were "marked as exhibits at trial but which were not received in evidence." Essentially, Gottlieb asks us to review evidence that he would have attempted to present at trial if the trial court had denied his motion for nonsuit. We have disregarded such exhibits, since they are not a proper part of the appellate record. Gottlieb also contends that Birman failed to "amend her complaint" to remove an allegation that Gottlieb had misappropriated an asset called the "Valor Fund" from the Badalung Trust. Birman's failure to amend her complaint in the trial court does not provide a basis for this court to impose sanctions on her or her counsel for filing a frivolous appeal. Finally, Gottlieb raises several arguments that mirror those made in his respondent's brief concerning the merits of Birman's appeal. While we conclude that Birman's appeal lacks merit for the reasons stated in part III.A., *ante*, we further conclude that Birman's appeal is not so completely and totally without any possible merit that it warrants the imposition of sanctions under *Flaherty*. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) Gottlieb's motion for sanctions is denied.

21

IV.

DISPOSITION

The judgment is affirmed.  Gottlieb is entitled to recover costs on appeal.

_____
                                                                                        AARON, J.

WE CONCUR:

_____
                        NARES, Acting P.J.


_____
                        O'ROURKE, J.

22